UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

BRENDA J. WOODS,

    Plaintiff,

v.

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant,
_____/

Case No. 1:15-CV-0426

HON. ROBERT J. JONKER

## OPINION

This is a social security action brought under 42 U.S.C. § 405(g) seeking judicial review of a final decision of the Commissioner of the Social Security Administration (Commissioner). Plaintiff Brenda Woods seeks review of the Commissioner's decision denying her claim for supplemental security income (SSI) under Title XVI of the Social Security Act.

### STANDARD OF REVIEW

The Court's jurisdiction is confined to a review of the Commissioner's decision and of the record made in the administrative hearing process. *See Willbanks v. Sec'y of Health & Human Servs.*, 847 F.2d 301, 303 (6th Cir. 1998). The scope of judicial review in a social security case is limited to determining whether the Commissioner applied the proper legal standards in making her decision and whether there exists in the record substantial evidence supporting that decision. *See Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989). The Court may not conduct a *de novo* review of the case, resolve evidentiary conflicts, or decide questions of credibility. *See Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). It is the Commissioner who is charged

with finding the facts relevant to an application for disability benefits, and her findings are conclusive provided they are supported by substantial evidence.  *See* 42 U.S.C. § 405(g).

Substantial evidence is more than a scintilla, but less than a preponderance.  *See Cohen v. Sec'y of Health & Human Servs.*, 964 F.2d 524, 528 (6th Cir. 1992) (citations omitted). It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993).  In determining the substantiality of the evidence, the Court must consider the evidence on the record as a whole and take into account whatever in the record fairly detracts from its weight. *See Richardson v. Sec'y of Health & Human Servs.*, 735 F.2d 962, 963 (6th Cir. 1984).  The substantial evidence standard presupposes the existence of a zone within which the decision maker can properly rule either way, without judicial interference.  *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (citation omitted).  This standard affords to the administrative decision maker considerable latitude, and indicates that a decision supported by substantial evidence will not be reversed simply because the evidence would have supported a contrary decision.  *See Bogle*, 998 F.2d at 347; *Mullen*, 800 F.2d at 545.

## PROCEDURAL POSTURE

Plaintiff was 48 years of age on the date of the Administrative Law Judge's (ALJ) decision.  (PageID.36, 68.)  She reported a seventh grade education, and was previously employed as a home health aide and childcare worker.  (PageID.70.)  Plaintiff previously applied for benefits, most recently on October 23, 2006, but was denied benefits by an ALJ.  (PageID.39.)  In the instant case, Plaintiff applied for SSI benefits on December 28, 2011, alleging that she had been disabled since December 1, 2010, due to depression, a learning disability, back pain, diabetes, high blood

pressure, high cholesterol, sleep apnea, anxiety, bronchitis, and acid reflux disease. (PageID.165.) Plaintiff's application was denied on August 21, 2012, after which time she requested a hearing before an ALJ. (PageID.179.) On July 3, 2013, Plaintiff appeared before ALJ Luke Brennan for an administrative hearing with testimony being offered by Plaintiff and a vocational expert (VE). (PageID.56–97.) In a written decision dated September 27, 2013, the ALJ determined that Plaintiff was not disabled. (PageID.36–55.) On February 19, 2015, the Appeals Council declined to review the ALJ's decision, making it the Commissioner's final decision in the matter. (PageID.24–29.) Plaintiff subsequently initiated this action under 42 U.S.C. § 405(g).

## ALJ'S DECISION

The social security regulations articulate a five-step sequential process for evaluating disability. *See* 20 C.F.R. §§ 404.1520(a-f), 416.920(a-f).[1] If the Commissioner can make a dispositive finding at any point in the review, no further finding is required. *See* 20 C.F.R. §§

---

[1] 1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. § 404.1520(b));

2. An individual who does not have a "severe impairment" will not be found "disabled" (20 C.F.R. § 404.1520(c));

3. If an individual is not working and is suffering from a severe impairment which meets the duration requirement and which "meets or equals" a listed impairment in Appendix 1 of Subpart P of Regulations No. 4, a finding of "disabled" will be made without consideration of vocational factors (20 C.F.R. § 404.1520(d));

4. If an individual is capable of performing work he or she has done in the past, a finding of "not disabled" must be made (20 C.F.R. § 404.1520(e));

5. If an individual's impairment is so severe as to preclude the performance of past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed (20 C.F.R. § 404.1520(f)).

3

404.1520(a), 416.920(a). The regulations also provide that if a claimant suffers from a nonexertional impairment as well as an exertional impairment, both are considered in determining the claimant's residual functional capacity (RFC). *See* 20 C.F.R. §§ 404.1545, 416.945.

Plaintiff has the burden of proving the existence and severity of limitations caused by her impairments and that she is precluded from performing past relevant work through step four. *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003). At step five, it is the Commissioner's burden "to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile." *Id.*

ALJ Brennan determined Plaintiff's claim failed at the fifth step of the evaluation. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the date of application. (PageID.42.) At step two, the ALJ determined Plaintiff had the following severe impairments: (1) disc bulging at L5-S1; (2) bilateral knee arthritis; (3) obesity; (4) major depressive disorder; and (5) mild intellectual learning disability/borderline intellectual functioning. (PageID.42.) At the third step, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or equaled the requirements of the Listing of Impairments. (PageID.43–45.) At the fourth step, the ALJ found that Plaintiff retained the RFC based on all the impairments:

> to perform a reduced range of light work as defined in 20 CFR 416.967(b). The claimant: can lift and carry up to 20 pounds occasionally and 10 pounds frequently; can, in an 8-hour workday, stand/walk for 6 hours and sit for 6 hours; can occasionally climb ramps and stairs, but can never climb ladders or scaffolds; can occasionally bend, twist, kneel, crouch, and crawl; must avoid unprotected heights; is limited to simple routin[e] tasks involving 1 to 2 steps; and is limited to making simple workplace decisions.

(PageID.45.) Continuing with the fourth step, the ALJ determined that Plaintiff was unable to perform any past relevant work. (PageID.50.)

At the fifth step, the ALJ questioned the VE to determine whether a significant number of jobs exist in the economy Plaintiff could perform given her limitations. *See Richardson*, 735 F.2d at 964. The VE testified that there existed approximately 18,900 jobs in the state of Michigan as a machine tender, line attendant, and packager that an individual similar to Plaintiff could perform. (PageID.92–93.) This represents a significant number of jobs. *See Hall v. Bowen*, 837 F.2d 272, 274 (6th Cir. 1988); *McCormick v. Sec'y of Health & Human Servs.*, 861 F.2d 998, 1000 (6th Cir. 1988).

Accordingly, the ALJ concluded that Plaintiff was not disabled at any point through September 27, 2013, the date of the decision. (PageID.51.)

## DISCUSSION

Plaintiff presents the following claims of error, which the Court has reordered to correspond to the order they rise in the sequential analysis:

1. The ALJ committed reversible error by allowing Plaintiff to proceed without a representative;

2. The ALJ committed reversible error by failing to find that Plaintiff's hypertension and headaches were severe impairments;

3. The ALJ committed reversible error by holding that Plaintiff could perform light work even though she required the use of a cane; and

4. The ALJ committed reversible error by not following the findings of Plaintiff's treating physician and psychologist.

(PageID.691.) The Court will discuss the issues below.

**1.**

When Plaintiff appeared at the administrative hearing, the ALJ observed that she was not represented by counsel, noted that this was Plaintiff's third hearing for benefits, and that at the prior proceeding, she had been previously represented by an attorney. (PageID.58–59.) He then advised Plaintiff of her right to be represented by an attorney or non-attorney to help her "cross-examine [the VE] when the time comes." (PageID.61.) The ALJ also told Plaintiff that a representative "can help explain what's in the evidence." (PageID.61.) Plaintiff stated that she understood her right to representation, that she did not have a representative, that she wanted to proceed without a representative, and signed a document stating as much. (PageID.61–62, 220.) Now, Plaintiff contends that the ALJ failed to perform his special duty to develop the record for her as an unrepresented claimant

Plaintiff bears the ultimate burden of producing sufficient evidence to show that she is disabled. *See Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1233 (6th Cir. 1993); *Landsaw v. Sec'y of Health & Human Servs.*, 803 F.2d 211, 214 (6th Cir. 1986) ("The burden of providing a complete record detailed enough to enable the [Commissioner] to make a disability determination, rests with the claimant."); *see also Allison v. Apfel*, No. 99-4090, 2000 WL 1276950 at *5 (6th Cir. Aug. 30, 2000). "[T]he mere fact that a claimant was unrepresented is not grounds for reversal." *Duncan v. Sec'y of Health & Human Servs.*, 801 F.2d 847, 856 (6th Cir. 1986). The Sixth Circuit has held that the ALJ has a special, heightened duty to develop the record when a claimant is without counsel, is not capable of presenting an effective case, and is unfamiliar with hearing procedures. *Lashley v. Sec'y of Health & Human Servs.*, 708 F.2d 1048, 1051 (6th Cir. 1983); *see also Trandafir v. Comm'r of Soc. Sec.*, 58 F. App'x 113, 115 (6th Cir. 2003). The

determination whether the ALJ failed in his duty to develop the record must be made on a case-by-case basis. *Lashley,* 708 F.2d at 1052; *see also Forrest v. Comm'r of Soc. Sec.*, 591 F. App'x 350, 363 (6th Cir. 2014).  Although an ALJ has an obligation to develop the facts to ensure that the claimant receives a full and fair hearing, the ALJ must not assume the role of counsel in doing so. *Lashley*, 708 F.2d at 1051 (citing *Richardson v. Perales,* 402 U.S. at 411).

        Here, the ALJ's questions were probing rather than perfunctory.  The hearing lasted nearly an hour and the transcript spans 42 pages.  (PageID.56.)  The ALJ inquired into whether there was additional evidence for him to consider and when advised there was, stated he was going to obtain that evidence. (PageID.64–65.)  The transcript shows that Plaintiff understood the nature of the proceedings and was able to present her claims and point the ALJ to medical records that she wanted the ALJ to consider. (Page ID.56–97).  *Compare Lashley*, 708 F.2d at 1052.

        Although Plaintiff's counsel now argues that the ALJ failed to develop the record, he has not presented any evidence, such as supplying the purportedly "overlooked" treatment records for the periods at issue, which may have indicated that further development of this record by the ALJ would have produced a different result.  Rather Plaintiff admits the ALJ in fact obtained the records at issue, and merely quibbles with the weight the ALJ gave them. (PageID.694.)  That is insufficient to establish err on these grounds.  *See Born v. Sec'y of Health & Human Servs.*, 923 F.2d 1168, 1172 (6th Cir. 1990); *see also Depweg v. Comm'r of Soc. Sec.*, No. 14-11705, 2015 WL 5014361, at *8 (E.D. Mich. Aug. 24, 2015); *Johnson v. Comm'r of Soc. Sec.*, No. 1:14-cv-141, 2015 WL 542387, at *7 (N.D. Ohio Feb. 10, 2015). The Court accordingly rejects this claim of error.

**2.**

Plaintiff secondly contends the ALJ failed to include her high blood pressure and headaches as severe impairments. (PageID.693–94.) A "severe impairment" is defined as an impairment or combination of impairments "which significantly limits your physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). Upon determining that a claimant has one severe impairment at step two of the sequential evaluation, the ALJ must continue with the remaining steps in the evaluation. *See Maziarz v. Sec'y of Health & Human Servs.*, 837 F.2d 240, 244 (6th Cir. 1987). Once the ALJ determines that a claimant suffers from a severe impairment, the fact that the ALJ failed to classify a separate condition as a severe impairment does not constitute reversible error. *Id.* An ALJ can consider such non-severe conditions in determining the claimant's RFC. *Id.* "The fact that some of [the claimant's] impairments were not deemed to be severe at step two is therefore legally irrelevant." *Anthony v. Astrue*, 266 F. App'x 451, 457 (6th Cir. 2008). Here, the ALJ found that Plaintiff had a number of severe impairments. (PageID.42) The ALJ considered Plaintiff's high blood pressure and headaches, but noted that she was taking medication for her blood pressure, and that the record did not support a determination that her headaches significantly limited her ability to do basic work activities. (PageID.42–43.) The ALJ's failure to include additional severe impairments at step two is legally irrelevant. Accordingly, Plaintiff's claim of error will be denied.

**3.**

In her third claim of error, Plaintiff argues it was in err for the ALJ to conclude that Plaintiff did not require the use of a cane. The record shows that a cane was prescribed by Dr. Michael Septer on April 30, 2012, when Plaintiff sought treatment for left knee pain. (PageID.660, 662.) The ALJ discussed Plaintiff's use of a cane in his decision, but ultimately

determined that Plaintiff did not require it because Plaintiff had previously presented with a normal gait and bilateral strength during an examination, and the prescribing doctor had also previously opined that Plaintiff only used a cane sometimes, and further did not indicate that the use of the cane was medically required. (PageID.46.) Additionally, the ALJ noted that Plaintiff's testimony at the hearing was not consistent with needing a cane, and that "subsequent treatment records do not document any objective evidence of a gait or balance impairment." (PageID.46.) The Court concludes the ALJ's determination that Plaintiff did not require the use of a cane is supported by substantial evidence.

On March 6, 2009, Dr. Mark Gostine examined Plaintiff and found that she walked with a normal gait and good bilateral strength. (PageID.566.) Three days later, on March 9, 2012, Dr. Septer stated Plaintiff would sometimes need a cane, but noted that a cane was not medically required. (PageID.549.) Approximately a month and a half later, on April 30, 2012, Dr. Septer prescribed a cane to Plaintiff, however the prescription is not exactly a model of clarity. (PageID.662.) The treatment note listing the prescription only lists "cane" under a list of medical prescriptions given during that visit. Dr. Septer did not state whether Plaintiff required the use of a cane at all times, for only certain situations, or whether Plaintiff would permanently need to use the cane. Given the vague nature of the prescription, it is not clear that Dr. Septer's prescription is inconsistent with the doctor's earlier statement that Plaintiff only sometimes needed to use a cane. While Dr. Septer would later note that Plaintiff used a cane "at all times," this does not appear to be an opinion that he believed Plaintiff needed to use a cane at all times, but rather just a notation of Plaintiff's actions (PageID.666.) In addition, despite Plaintiff's complaints of left knee pain, objective examinations taken after Dr. Septer prescribed the cane revealed normal results. On

June 8, 2012, Dr. Derek Lado evaluated Plaintiff's left knee. X-rays were normal and Plaintiff had a negative Lachman's test.[2] (PageID.563.) Dr. Lado ordered an MRI to rule out a meniscal tear. On June 29, 2012, Plaintiff met with Dr. Lado to go over the results of the MRI. The doctor found that Plaintiff had general pain, but had "good strength for bilateral hip flexion, bilateral ankle dorsiflexion and plantarflexion." (PageID.559.) Dr. Lado noted that while Plaintiff had a history of falls, the MRI of her left knee was "[e]ssentially normal" aside from an old injury to a non-weight bearing portion of her knee. (PageID.559.) At the hearing, Plaintiff testified that she had a history of falling, but her testimony identified instances in which she was changing positions from standing to sitting, or preparing to climb stairs, not ambulating. (PageID.80.)

In sum, the ALJ's decision that Plaintiff does not need a cane to walk is supported by substantial evidence. The Court is not without sympathy for Plaintiff. It does appear that Plaintiff does walk, at least sometimes, with a cane. (PageID.530, 555, 569, 573, 595, 666.) However, given the vague nature of Dr. Septer's prescription and generally negative results from objective testing, the Court cannot conclude the ALJ acted outside his zone of choice. *See Mullen*, 800 F.2d at 545. RFC is the most, not the least, a claimant can do despite her impairments. 20 C.F.R. § 404.1545(a); *Griffeth v. Comm'r of Soc. Sec.*, 217 F. App'x 425, 429 (6th Cir. 2007). Accordingly, this claim of error fails.

**4.**

Plaintiff finally argues the ALJ failed to properly consider the medical opinions in the record. Specifically, Plaintiff argues the ALJ should have given the opinions of Dr. Michael

---

[2]Lachman's test is used to determine whether a patient has suffered a tear of the anterior cruciate ligament. See, e.g., Lachman's Test, available at http://www.fpnotebook.com/Ortho/Exam/LchmnTst.htm (last visited on July 29, 2009).

Septer, as well as the opinion of Dr. Lennox Forrest, PhD, controlling weight, and erred in giving more weight to a non-examining medical consultant over the opinions of Dr. Septer and Dr. Forrest. The Court disagrees.

The treating physician doctrine recognizes that medical professionals who have a long history of caring for a claimant and her maladies generally possess significant insight into her medical condition. *See Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994). An ALJ must, therefore, give controlling weight to the opinion of a treating source if: (1) the opinion is "well supported by medically acceptable clinical and laboratory diagnostic techniques" and (2) the opinion "is not inconsistent with the other substantial evidence in the case record." *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 375–76 (6th Cir. 2013) (quoting 20 C.F.R. § 404.1527). It appears undisputed that Dr. Septer and Dr. Forrest qualify as treating physicians.

The deference accorded to such opinions is appropriate, however, only where the particular opinion "is based upon sufficient medical data." *Miller v. Sec'y of Health & Human Servs.*, 1991 WL 229979 at *2 (6th Cir., Nov. 7, 1991) (citing *Shavers v. Sec'y of Health & Human Servs.*, 839 F.2d 232, 235 n.1 (6th Cir. 1987)). The ALJ may reject the opinion of a treating physician where such is unsupported by the medical record, merely states a conclusion, or is contradicted by substantial medical evidence. *See Cohen*, 964 F.2d at 528; *Miller*, 1991 WL 229979 at *2 (citing *Shavers*, 839 F.2d at 235 n.1); *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286–87 (6th Cir. 1994).

If an ALJ accords less than controlling weight to a treating source's opinion, the ALJ must "give good reasons" for doing so. *Gayheart*, 710 F.3d at 376. Such reasons must be "supported by the evidence in the case record, and must be sufficiently specific to make clear to any

subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Id.* This requirement "ensures that the ALJ applies the treating physician rule and permits meaningful review of the ALJ's application of the rule." *Id.* (quoting *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004)). Simply stating that the physician's opinions "are not well-supported by any objective findings and are inconsistent with other credible evidence" is, without more, too "ambiguous" to permit meaningful review of the ALJ's assessment. *Id.* at 376–77.

    A.    Dr. Septer

The record contains several opinions from Dr. Septer that Plaintiff argues the ALJ erred in failing to give controlling weight. (PageID.548–49, 552, 665–66.) Among other things, Dr. Septer opined that Plaintiff could only sit, stand, or walk for one to two hours in an eight hour workday. Plaintiff could never lift even only ten pounds. (PageID.552, 665.) Dr. Septer further stated that Plaintiff would have serious limitations in pace and concentration, would need an at will sit/stand option, would be absent from work more than three days per month, and would need in home care. (PageID.552, 666.) Ultimately, Dr. Septer opined that Plaintiff could not work at any job, and that this restriction was permanent. (PageID.665.)

The ALJ provided good reasons to discount the extreme opinions offered by Dr. Septer. They were inconsistent with his treatment notes that repeatedly advised Plaintiff to get thirty to sixty minutes of aerobic exercise a day. (PageID.519, 614, 619.) They were also inconsistent with Dr. Septer's note that with pain management Plaintiff's "suffering [has] improved, and the patient is experiencing a more tolerable level of daily function, personal interaction, and mental health." (PageID.622, 608.) Finally, the ALJ determined that the opinions were of limited

usefulness because the opinions largely consisted as check-boxes and short answers. (PageID.49.) The Sixth Circuit has recently reaffirmed that such opinions, without accompanying explanations, are "weak evidence at best." *Hernandez v. Comm'r of Soc. Sec.*, No. 15-1875, 2016 WL 1055828, at *4 (6th Cir. Mar. 17, 2016). Accordingly, Plaintiff's claim on these opinions fails.

### B.   Dr. Forrest

On July 2, 2013, Dr. Lennox Forrest, Plaintiff's treating psychologist, authored a letter to the Social Security Administration in support of Plaintiff's application for disability benefits. Dr. Forrest stated that Plaintiff's intellectual functioning fell between a mild and moderate mental retardation range. (PageID.554.) As a result, Dr. Forrest opined that Plaintiff struggled with mental, emotional, and physical functioning, all of which affected her activities of daily living. (PageID.554.) Dr. Forrest also filled out a psychological medical report regarding Plaintiff. In it, Dr. Forrest gave Plaintiff a poor prognosis, assigned a GAF of 50, and diagnosed her with major depressive disorder, adjustment disorder with anxiety, borderline intellectual functioning, and posttraumatic stress disorder. (PageID.499.)

The Court finds no violation of the treating physician rule. Dr. Forrest's opinions were not well supported by objective evidence and were not entitled to controlling weight. The ALJ complied with the procedural requirement of providing "good reasons" for the weight he gave to Dr. Forrest's opinions. Dr. Forrest's opinions did not specify functional limitations, and accordingly were of limited usefulness. Moreover, the record does not contain any treatment notes by Dr. Forrest that might support his conclusion. Treatment records from Dr. Septer, on the other hand, consistently note that Plaintiff's mental examinations were normal. (PageID.591–92, 595, 598.) Accordingly, the ALJ did not err in his treatment of Dr. Forrest's opinion.

  C. *Medical Consultant*

The ALJ gave "great weight" to the opinion of Dr. Ruqiya Tareen, who opined that Plaintiff "seems to be capable of understanding and remembering simple instructions and tasks, but would have difficulty with detailed instructions and tasks." (PageID.175.) The doctor further noted that Plaintiff would "have difficulty with detailed, complex and sequential tasks. The ability to sustain concentration and pace while performing such tasks will be moderately affected. The claimant may have moderate difficulties to complete a normal workweek secondary to psychologically based symptoms." (PageID.176.) Plaintiff appears to argue that Dr. Forrest opined Plaintiff was further impaired than that found by Dr. Tareen, and that as a treating physician, the ALJ was required to give Dr. Forrest's opinion more weight over the opinion of Dr. Tareen. The Court disagrees.

"In appropriate circumstances, opinions from State agency medical and psychological consultants and other program physicians and psychologists may be entitled to greater weight than the opinions of treating or examining sources." SSR 96-6P, 1996 WL 374180, at *3 (S.S.A. July 2, 1996). When an ALJ has provided "good reasons" for discounting a treating physician's opinion, as is the case here, the ALJ is not required to afford less weight to the state agency source's opinions as long as it is supported by the evidence of record. *See Helm v. Comm'r of Soc. Sec.*, 405 F. App'x 997, 1002 (6th Cir. 2011). Here, as the ALJ concluded, Dr. Tareen's report was consistent with the other objective evidence of record and Plaintiff's testimony. (PageID.49.) As a result, the ALJ did not improperly rely on Dr. Tareen's opinion regarding Plaintiff's functional capabilities.[3]

---

[3]At the close of this argument, Plaintiff tacks on a single conclusory sentence that Plaintiff's RFC, with regards to her physical impairments, is unsupported by substantial evidence. (PageID.693.) Plaintiff did not include this argument in her statement of errors, nor provide legal

14

## CONCLUSION

For the reasons set forth herein, the Commissioner's decision will be **AFFIRMED.**

A separate judgment shall issue.


Dated:      April 13, 2016              /s/ Robert J. Jonker
                                        ROBERT J. JONKER
                                        CHIEF UNITED STATES DISTRICT JUDGE

---

argumentation beyond the conclusory sentence.  Issues raised in a perfunctory manner are deemed waived, and accordingly Plaintiff has waived this argument.  *See Clemente v. Vaslo*, 679 F.3d 482, 497 (6th Cir. 2012); *Geboy v. Brigano*, 489 F.3d 752, 767 (6th Cir. 2007).